**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

METRO ASSOCIATION OF PLUMBING-HEATING-COOLING CONTRACTORS,

Plaintiff,

v.

MINNESOTA MECHANICAL CONTRACTORS ASSOCIATION and PETTERSEN & ASSOCIATES, INC.,

Defendants.

Civil No. 01-1368 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER FOR REMAND**

---

Patrick J. Lee-O'Halloran and Dean Beard Thomson, FABYANSKE, WESTRA & HART, P.A., 920 Second Avenue South, Suite 1100, Minneapolis, MN 55402, for plaintiff.

Penelope J. Phillips, FELHABER, LARSON, FENLON, & VOGT, 601 Second Avenue South, Minneapolis, MN 55402, for defendants.

Plaintiff Metro Association of Plumbing-Heating-Cooling Contractors ("PHCC") and defendant Minnesota Mechanical Contractors Association ("MMCA") are multi-employer associations consisting of contractors that employ union labor. Defendant Pettersen & Associates was hired by MMCA to perform administrative functions. PHCC filed suit in Hennepin County District Court alleging state law claims of breach of contract, interference with contract, unfair competition, and wrongful interference with

FILED MAR 18 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. MAR 1 2002
DEPUTY CLERK

employment. Defendants filed a notice of removal to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185. This matter is now before the Court on plaintiff's motion to remand to Hennepin County District Court pursuant to 28 U.S.C. § 1447.

## BACKGROUND

PHCC and MMCA ("the Associations") negotiate collective bargaining agreements with labor unions on behalf of their members. Both Associations maintain "industry funds," which help pay for operating expenses and other costs. Industry funds are financed through contributions from contractor-members, which are based upon the number of hours worked by their employees. For example, a contractor-member of PHCC will contribute a certain number of cents to the PHCC industry fund for each hour worked in the trade by each of the contractor's employees. The collective bargaining agreements that the Associations negotiate typically contain a section that addresses industry funds, providing that the contractor shall contribute to a particular fund, the amount of the contribution, and the purposes for which the funds will be used.[1]

---

[1] Following is a representative example of such a provision:

> Article XX -- Industry Fund
>
> Section 1. The Employer shall pay to the Minnesota Mechanical Contractors Industry Fund the sum outlines in the Appendix for every hour worked, including overtime hours, by journeymen, foremen, and general foremen, and apprentices and employees engaged in or performing the duties of any of them within the jurisdiction of the Union.
>
> Section 2. The payments so made shall be used for industry promotional and related purposes, in accordance with the Trust Agreement of said Minnesota Mechanical Contractors Industry Fund.

(Footnote continued on next page.)

PHCC alleges that in September 1999, the Associations mutually agreed that a contractor-member of either Association could switch its contribution to the other industry fund. Presumably, this was done to make it easier for contractor-members to change affiliations between Associations. According to PHCC, the parties agreed that contractor-members could switch funds by filling out a one-page transfer form. PHCC claims that this agreement formalized an existing practice, by which contractor-members had been able to switch funds over the telephone. PHCC further alleges that both parties accepted the new practice, and that each of them occasionally used the form to transfer member contributions to the other fund. PHCC alleges that in May 2001, MMCA suddenly began refusing to acknowledge completed transfer forms. This lawsuit followed.

## ANALYSIS

### I. Standard of Review

Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a), which provides in relevant part:

---

(Footnote continued.)

> Section 3. The Employer agrees to abide by the Trust Agreement developed and administered by the Minnesota Mechanical Contractors Association and accepts the Trustees selected and appointed in accordance with said Trust as his representatives and to administer the funds in the possession of said Fund.

Trachsel Aff. Ex. B p. 22.

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court of the United States for the district and division embracing the place where such action is pending.

After removal, if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). When reviewing a motion to remand, the Court must resolve all doubts about federal jurisdiction in favor of remand. *Peterson v. BASF Corp.*, 12 F. Supp. 2d 964, 968 (D. Minn. 1998); *In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993). Defendants, as the parties seeking removal and opposing remand, have the burden of establishing federal subject matter jurisdiction. *Id.*

## II. Section 301 and "Complete Preemption"

An action that has been filed in state court can be removed only if the case could have been originally filed in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). When, as here, there is no diversity of citizenship, the "well-pleaded complaint rule" requires that a federal question must be presented on the face of plaintiff's properly pleaded complaint. *Id.* A case may not be removed on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *Id.* at 393; *Franchise Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust for So. Calif.*, 463 U.S. 1, 13-14 (1983). An independent corollary to the well-pleaded complaint rule is the doctrine of "complete preemption." *Caterpillar*, 482 U.S. at 393. Under this doctrine, the Supreme Court has

concluded that "a narrow class of claims are so 'necessarily federal' that they always will permit removal to federal court, even if they are raised only by way of defense." Charles Alan Wright, Arthur R. Miller, & Edward Cooper, 14C *Federal Practice & Procedure: Jurisdiction* § 3722.1 (3d ed. 1998); *Caterpillar*, 482 U.S. at 393. Defendants argue that the doctrine of complete preemption supports removal in this case; PHCC argues that its claims are independent matters of state law and that complete preemption does not apply.

Complete preemption is frequently applied to § 301 of the LMRA. *See Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-05 (1962) (explaining that the complete preemption doctrine must apply to cases falling under § 301 so that federal labor law will be interpreted uniformly); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-210 (1985). Section § 301(a) provides that federal district courts have jurisdiction over suits "for violation of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations."[2] 29 U.S.C. § 185(a). *See Franchise Tax Bd.*, 463 U.S. at 23-24 (holding that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.").

---

[2] The full text of Section 301(a) is as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In *Allis-Chalmers*, the Supreme Court expanded the reach of § 301 to encompass more than suits for violation of contracts, holding that "when resolution of a state-law claim is substantially dependent upon the terms of an agreement made between parties in a labor contract," that claim is preempted and treated as a claim under § 301. 471 U.S. at 220. The Court explained that the labor policies underlying § 301 require that "the relationships created by a collective-bargaining agreement" be defined by federal law. *Id.* at 211 (citation and quotation marks omitted). The Supreme Court refined this rule in *Lingle v. Norge Div. of Magic Chef, Inc.*, which held that § 301 preempts application of state law "only if such application requires the interpretation of a collective bargaining agreement." 486 U.S. 339, 413 (1988).

The contract at issue in this case is not a collective bargaining agreement, but the alleged agreement between the Associations over switching between industry funds. This agreement would apparently modify the industry fund provisions of collective bargaining agreements that MMCA and PHCC negotiate with unions. These provisions dictate that contractors must contribute to particular industry funds; defendants argue that the purported agreement between the Associations contradicts the terms of the collective bargaining agreements. Thus, defendants claim, resolution of the present case requires interpretation of collective bargaining agreements, and complete preemption should therefore apply.

The industry fund provisions are non-mandatory subjects of collective bargaining. *NLRB v. Local 264, Laborers' Int'l Union of No. Amer.*, 529 F.2d 778, 786 (8th Cir. 1976). As such, mid-term modifications of the provisions do not violate federal labor

law. *Allied Chem. & Alkali Workers of Amer., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 188 (1971). Rather, such modifications are more properly addressed in an ordinary breach of contract action. *Id.* This point is relevant to whether § 301 preemption applies in the present case.

It is well established that the reason § 301 triggers complete preemption is to ensure uniform interpretation of federal labor law. *Lucas Flour*, 369 U.S. at 103; *Lueck*, 471 U.S. at 211; *Lingle*, 486 U.S. at 404. The Supreme Court has held that the policies underlying § 301 "require that the relationships created by a collective-bargaining agreement" be defined by federal law. *Lueck*, 471 U.S. at 210-11 (citation and quotation marks omitted). In the present case, the relationship between MMCA and PHCC has nothing to do with collective bargaining agreements, and is independent from the Associations' relationships with unions. Since federal labor law does not recognize actions for breach of industry-fund agreements, the Court cannot conclude that such provisions are integral to the "policies that animate § 301." *Id.* at 210.

"[N]ot every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301. . . . Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law. . . ." *Id.* at 211-12. Defendants do not explain why federal labor policy requires that disputes between employer groups over industry fund contributions must be interpreted by a uniform body of federal law. The Court therefore concludes that the present dispute between the Associations only tangentially involves the collective bargaining agreements. Even though the parties may

need to consult a collective bargaining agreement to help resolve this dispute, that is not sufficient to grant jurisdiction under § 301. *See Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[T]he bare fact that a collective bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished."). *See also Brown v. Holiday Stationstores, Inc.*, 723 F. Supp. 396, 407 (D. Minn. 1989) ("[A] cause of action stemming from . . . state law is not necessarily preempted, even if a provision of a collective bargaining agreement is a factor in resolving the state law dispute."). This issue – which need not even be in the collective bargaining agreement – certainly is not "inextricably intertwined" with the collective bargaining agreement. *Lueck*, 471 U.S. at 213.

Even if the state-law dispute between the Associations did sufficiently implicate a collective bargaining agreement, § 301 would still not apply because the Court cannot conclude that the statute governs suits between employers.[3] Over the years, the Supreme Court has expanded the reach of § 301, going beyond its text to include suits for non-contractual violations, *see Lueck*, 471 U.S. at 210, and cases by individual employees, *see Smith v. Evening News Ass'n*, 371 U.S. 195 (1962). However, in this case defendants ask the Court to find § 301 jurisdiction over a lawsuit between two employers, the subject of which is a private agreement that only tangentially relates to a collective bargaining

---

[3] Multi-employer associations like MMCA and PHCC are considered "employers" under federal labor law. *See* 29 U.S.C. § 152(2); *Associated Shoe Indus. of S.E. Mass., Inc.*, 81 N.L.R.B. 224 (1949).

agreement. The Court has found no cases in which § 301 preemption has been applied to a breach of contract suit between employers.[4]

At oral argument, defense counsel cited three cases for the proposition that § 301 does apply to this case. None of these cases, however, provides the support that defendant asserts. Each of the cases involves union members (as opposed to a union) bringing suit under § 301. In all three cases, courts held that although the statute does not explicitly provide for suits by individuals, the purpose of § 301 is fulfilled by allowing such suits, especially when the suit required interpretation of a collective bargaining agreement. In *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962), the Court held that individual employees can bring suit against their employers under § 301. In *Smith v. DCA Food Industries, Inc.*, a district court held that § 301 jurisdiction existed over a suit by employees against both their employer and their union. 269 F. Supp. 863, 870 (D. Md. 1967). Finally, in *Alvares v. Erickson*, the Ninth Circuit rejected the claim that either a union or an employer must be party to an action for § 301 to apply. 514 F.2d 156, 162 (9th Cir. 1975). Aside from being an aberration and possibly at variance with subsequent Ninth Circuit case law,[5] *Alvares* lends no support to defendants because the Ninth Circuit's assertion is not germane to the question in this case – whether § 301

---

[4] This issue is further complicated by the presence of defendant Pettersen & Associates, which is neither an employer nor a labor organization, but a contractor employed by MMCA. An extensive body of case law holds that non-parties to collective bargaining agreements may not be parties to suits under § 301. *See McPeek v. Beatrice Co.*, 936 F. Supp. 618, 631-32 (N.D. Iowa 1996) (citing numerous cases); *Loss v. Blankenship*, 673 F.2d 942, 946 (7th Cir. 1982). *But see* 13 Emp. Coordinator ¶ LR-44,472 (Feb. 8, 2002 Supp.) (noting disagreement among courts on this point).

[5] *See Sampson v. United Federation of Teachers*, 1990 WL 480048 at *3 (S.D.N.Y. 1990) (holding that *Alvares* is an aberration).

grants jurisdiction over cases between two employers. The precise holding in *Alvares* was that an independent union, which had broken off from the statewide bargaining unit, could bring suit under § 301 against trustees of a statewide health and welfare trust. The Ninth Circuit noted that § 301's policy of avoiding labor-management strife was an important consideration in its decision. *Alvares*, 514 F.2d at 163-64. In the present case, labor-management strife is not an issue, because no labor organization is a party to the suit, and the provision at issue – the industry fund – affects neither unions nor employees.

*Alvares* also based its holding in part upon the U.S. Supreme Court's exhortation in *Smith v. Evening News Association* not to read § 301(a) narrowly. *See* 371 U.S. at 199. In all the cases cited by *Alvares*, courts liberally construing § 301 found jurisdiction when employees sought benefits due to them. *See, e.g., International Ass'n of Machinists & Aerospace Workers, Lodge No. 1194 v. Garwood Indus., Inc.*, 368 F. Supp. 357 (D. Ohio 1973) (finding § 301 jurisdiction in action by union and former employees against employer regarding pension fund); *Local Union No. 626 of United Broth. of Carpenters & Joiners of Amer., v. Delaware Contractors Ass'n*, 344 F. Supp. 1281 (D. Del. 1972) (finding § 301 jurisdiction in action by union against employer organization regarding vacation fund); *Bey v. Muldoon*, 217 F. Supp. 404 (D. Pa. 1963) (finding § 301 jurisdiction in action by union members against union regarding longshoremen's unemployment fund). *See also Alvares*, 514 F.2d at 162 n.3 (citing cases). This type of subject matter – action for health and welfare benefits – is far more relevant to the purposes of § 301 than the present case, which is simply a monetary dispute between employers.

The Supreme Court stated in *Lueck* that the full scope of preemption must be worked out on a "case-by-case basis." 471 U.S. at 220. The present case involves subject matter that touches only tangentially upon a collective bargaining agreement. Furthermore, there is little or no authority upon which this Court can find § 301 jurisdiction between the parties in this case, when to do so would clearly contradict the explicit statutory language. Accordingly, the Court finds that this case goes beyond the proper boundaries of § 301. The Court does not have subject-matter jurisdiction over plaintiff's claim, and under 28 U.S.C. § 1447, it must be remanded to the Hennepin County District Court.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for remand to [Docket No. 6] is **GRANTED**.

2. This matter is remanded to the State of Minnesota District Court, Fourth Judicial District, Hennepin County.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 18, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge